**OREGON RESTAURANT & BEVERAGE ASSOCIATION, Jack Nasholm and Fred Feller, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 25042.**

United States Court of Appeals, Ninth Circuit.

July 2, 1970.

Rehearing Denied July 31, 1970.

R. W. Kitson (argued) of Rader & Kitson, Portland, Or., for appellants.

Jack G. Collins (argued) Asst. U. S. Atty., Sidney I. Lezak, U. S. Atty., Portland, Or., for appellee.

Before CARTER, HUFSTEDLER and WRIGHT, Circuit Judges.

PER CURIAM:

This is an appeal from convictions and sentences for a combination and conspiracy in unreasonable restraint of interstate and foreign trade and commerce in beer, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Appellants, defendants below, are a non-profit trade organization whose members are taverns and bars and two individual tavern owners. We affirm the convictions.

The liquor law of Oregon authorizes licensed wholesalers to sell beer to licensed retail outlets and also, "in quantities of not less than five gallons to any unlicensed organization, lodge, picnic party or private gathering." ORS 471.-240. The law carries an added provision prohibiting the resale of beer purchased by an unlicensed group. ORS 471.452. Prior to November, 1965, it was the practice in Oregon for wholesalers to sell beer in cases and kegs "off the dock", i. e., directly from their premises to the consuming public. Certain of such sales could legally be made as sales to an unlicensed group. However, trial testimony indicated that some of these sales were illegal in that, among other things, certain wholesalers were selling to consumers in quantities less than the five gallon minimum contained in the "unlicensed organization" exception and were also selling to the consuming public in any quantity.

The tavern operators became displeased with the competition created by the "off the dock" sales, and, beginning in November, 1965, meetings were held between the operators and the wholesalers. At the meetings the wholesalers were told that if they did not cease the practice of "off the dock" selling, the tavern owners would not purchase from them. The wholesalers were also requested to sign agreements to this effect. Of prime importance to this case is the fact that there was no distinction made between legal "off the dock" sales and illegal ones. All were prohibited. The restraint that resulted was brought to the attention of the Antitrust Department and an indictment followed.

■■ We have considered appellants' claims of error and find them all to be without merit. First, since it was their intent to stop all "off the dock" selling, their conduct was violative notwithstanding the fact that some of the sales were illegal.

Second, the court instructed the jury, in part: "He [a wholesaler] may not, of course, sell to minors, intoxicated or interdicted persons, nor for that matter to anyone not included in the categories of an unlicensed organization, lodge, picnic party or private gathering. So when the indictment refers to the consuming public or consumers, it will be construed by you as meaning eligible consumers only."

Appellants' contention to the contrary notwithstanding, the last sentence of the above did not amount to an amendment of the indictment. It was merely an interpretation of the indictment and the applicable law. Furthermore, the instruction protected appellants from the injustice alleged under their first claim of error, i. e., that they were convicted for restraining unlawful trade.

█ Finally, we believe (1) that the court properly and adequately instructed the jury as to appellants' rights of freedom of speech and assembly, and (2) that the court did not, prejudicially or otherwise, refer to appellants as co-conspirators in its instructions.

Judgment is affirmed.